```
              UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Robin Syms

   v.                                          Civil No. 10-cv-499-JD
                                                    Opinion No. 2011 DNH 116

Michael J. Astrue, Commissioner
Social Security Administration


O R D E R

Robin Syms seeks judicial review, pursuant to 42 U.S.C. 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for social security benefits under Title II.  Syms challenges the finding of the Administrative Law Judge ("ALJ") that did not include depression as a severe impairment, the ALJ's evaluation of her subjective complaints, and the finding that there was other work Syms could do despite her impairments.  The Commissioner moves to affirm the decision.


Background

Robin Syms is a high school graduate and worked as a licensed practical nurse.  On April 4, 2008, Syms filed an application for disability insurance benefits, alleging a

disability as of May 1, 2007. She was fifty-one years old when she applied for benefits.

Dr. Hilke Breder treated Syms for back pain, knee pain, and chronic pain syndrome due to fibromyalgia, depression, and anxiety from July of 2004 to June of 2008. An MRI of her lumbar spine done in January of 2008, showed degenerative changes with possible nerve root compromise at L4-5. In June of 2008, Dr. Breder reported that Syms was depressed and diagnosed chronic depression, dysthymia, and generalized anxiety disorder that caused difficulty in coping with stressful situations but still allowed her to perform activities of daily living and to have appropriate social interactions.

Syms had back surgery in April of 2006. On discharge, Syms was prescribed Prozac, Ativan, and Vicodin. Despite doing well after surgery, Syms continued to take Vicodin. By June of 2006, her physician wrote that Syms should no longer be taking narcotic pain medication and that he would get her into a strengthening program and off narcotics as quickly as possible.

Dr. William Vranos performed arthroscopic knee surgery on Syms in February of 2008. Because Syms continued to experience knee pain, Dr. Vranos noted that further surgery might be necessary. An MRI showed meniscal tears, a small cyst, degenerative changes, and other abnormalities.

Dr. Robert S. Cummings treated Syms from June to October of 2008 for knee pain and swelling. Syms had arthroscopic debridement of her knee in September, and in October of 2008 Syms reported that her knee felt good. She said she was pleased with the result.

On July 2, 2008, Dr. Hugh Fairley, a state agency medical consultant, completed a physical residual functional capacity assessment. Dr. Fairley wrote that because of Syms's back condition, osteoarthritis in her left knee, and fibromyalgia, she was limited to light work with no more than occasional postural maneuvers. Dr. Fairley also wrote that Syms's symptoms and the severity of her symptoms were consistent with her medically determinable impairments.

Richard Toye, Ph.D., did a consultative examination of Syms on September 2, 2008, to evaluate her depression and anxiety. Syms reported that she had been treated for depression since 1989 and that she experienced intermittent anxiety and concentration problems related to fibromyalgia. Dr. Toye noted that Syms had been prescribed medication for depression, anxiety, and panic disorder by her primary care physician. Syms explained that she was hard of hearing but could not afford hearing aids. After hearing Syms's report of her activities, Dr. Toye diagnosed dysthymic disorder, alcohol abuse in remission, fibromyalgia,

osteoarthritis, and knee pain.  As to the effects of her impairments, Dr. Toye wrote that Syms could deal with moderately complex instructions and could interact appropriately with others but that her ability to maintain her concentration and effort were impaired.  Dr. Toye stated that despite the impairment of Syms's ability to concentrate and maintain effort, she could complete routine tasks over time.

Craig Stenslie, Ph.D., a state agency medical consultant, completed a psychiatric review technique and mental residual functional capacity assessment on September 23, 2008.  Dr. Stenslie stated that Syms had affective disorders which caused mild restrictions of her daily activities; mild difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and one or two episodes of extended decompensation.  Dr. Stenslie also wrote that Syms would have moderate limitations in maintaining a schedule and attendance which would cause her to work at a slower than usual pace but nevertheless within what is reasonable in a job setting.

A hearing was held before an ALJ on May 20, 2010.  Syms and her husband testified by video conference.  She was not represented during the hearing and testified that she understood

her right to representation but chose to proceed on her own.  A vocational expert also testified.

Syms testified that she left her nursing job in 2004 because of her unhappiness with her job situation.  She said that at the time of the hearing she had back and knee pain, fibromyalgia, anxiety, depression, memory impairment, and hearing loss.  She said that she can do usual activities but does them more slowly.  She said that she was treated for depression starting in 1989 and still took Prozac for depression.  Syms's husband testified that Syms had tried to work at his company but could not do the job because her pain medication made her confused and she made a lot of mistakes.

The ALJ asked the vocational expert to assume a person who could do light work with certain postural limitations and who "may perform tasks at a slower than usual rate, but not so slow as to be outside what is reasonable for a job setting."  Admin. Rec. at 58.  The vocational expert responded that a person with those limitations could not do Syms's past work as a nurse but could work as a typist keyer, a personal attendant, a housekeeper, and an information clerk.  If the same person also were limited to lifting and carrying a maximum of ten pounds, standing and walking for only two hours in a work day, and only simple, routine, and repetitive tasks, she could not do the jobs

requiring transferable skills such as a personal attendant. Further, the vocational expert said that a hearing loss would not impact the jobs available.

The ALJ issued a decision on May 28, 2010, concluding that Syms was not disabled for purposes of receiving social security benefits. The ALJ found that Syms had severe impairments due to her status of post left knee arthroscopy, left knee degenerative disease, status post L4-5 discectomy, fibromyalgia, and alcohol abuse in remission. The ALJ further found that although Syms could not return to her former work as a nurse, she had transferable skills and could do other work in the relevant economies.

When the Decision Review Board failed to complete review within the time allowed, the ALJ's decision became the final decision of the Commissioner.

Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial

evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

Discussion

Syms moves to reverse the Commissioner's decision, arguing that the ALJ erred in failing to find that her depression was a serious impairment at Step Two of the sequential analysis, failing to properly evaluate Syms's subjective symptoms, and lacking substantial evidence at Step Five that work existed that Syms could do. The Commissioner responds that because the ALJ found some severe impairments at Step Two no error occurred, that the ALJ properly assessed Syms's subjective complaints, and that the vocational expert's testimony provided substantial evidence to support the ALJ's decision.

A.  Step Two

At Step Two of the sequential analysis, an applicant for social security benefits must show "that [s]he has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The requirement of a medically severe impairment or combination of impairments is met unless the record shows "only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." McDonald v. Sec'y of Health & Human Servs., 795

F.2d 1118, 1124 (1st Cir. 1986). The purpose of Step Two is "to do no more than screen out groundless claims." Id.

The ALJ found that Syms has severe impairments caused by her status post left knee arthroscopy, left knee degenerative disease, status post L4-5 discectomy, and alcohol in remission. The ALJ did not find that Syms's depression constituted a severe impairment and mistakenly wrote that Syms had not been treated for depression. Because the ALJ did find severe impairments and continued on through the remaining steps of the sequential analysis, however, the omission of depression as a severe impairment does not require reversal of the decision in this case. See, e.g., Delia v. Comm'r of Social Security, 2011 WL 2748622, at *1 (11th Cir. July 14, 2011); Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

B. Subjective Complaints

In assessing Syms's residual functional capacity, the ALJ found she retained the ability to do light work with some postural limitations. The ALJ also found that Syms's medically determinable impairments could reasonably be expected to cause the symptoms she alleged. The ALJ further found, however, that Syms's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment."  Admin. Rec. at 13.

When an applicant shows that she has impairments that could reasonably be expected to produce the symptoms which she alleges, the ALJ must determine the intensity, persistence, and limiting effects of the symptoms.  20 C.F.R. § 404.1529(c).  An applicant's statements about the effects of her symptoms are evaluated in light of the medical evidence and other evidence such as precipitating and aggravating factors, medications and treatment, and how the symptoms affect the applicant's daily living.  § 404.1529(c)(3).  It is the job of the ALJ, however, not the court, to assess the applicant's credibility, to draw inferences from the record, and to resolve any conflicts in the evidence.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Syms faults the ALJ for failing to consider the effects of her medications and for failing to consider medical evidence that she has had knee and back problems and has been diagnosed with fibromyalgia.  The ALJ did acknowledge Syms's impairments caused by knee and back problems and fibromyalgia but noted that Syms maintained a full range of daily activities and hobbies.  The ALJ also relied on the opinions of Dr. Toye, Dr. Breder, and Dr.

Stenslie, which Syms does not challenge.  Dr. Toye explained the medications Syms was taking and the potential effect on her concentration and ability to sustain effort but concluded that Syms could deal with moderately complex instructions and interact appropriately with others.  Dr. Stenslie said that Syms would work more slowly than the usual rate but within what would be reasonable in a work setting.  Dr. Breder said that Syms was able to perform daily activities despite some pain.  The ALJ also credited Dr. Fairley's opinion that Syms could do work at the light exertional level with some postural limitations.

The ALJ properly assessed Syms's credibility as required under the regulations.  The ALJ also pointed to substantial evidence in the record to support her decision that Sym's testimony about the severity of her symptoms could not be fully credited.  Therefore, the ALJ's determination must be upheld.

C.  Other Work

At Step Five, the Commissioner must provide evidence that work exists in relevant numbers that the applicant can do.  See Seavey, 276 F.3d at 10 n.9; Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 294 (1st Cir. 1986).  A vocational expert's opinion may constitute substantial evidence to support an ALJ's finding at Step Five only if the hypothetical posed to the

vocational expert accurately reflects the applicant's limitations.  <u>Arocho v. Sec'y of Heath & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982); <u>Sousa v. Astrue</u>, --- F. Supp. 2d ---, 2011 WL 1760284, at *7 (D. Mass. May 9, 2011).  Syms contends that the ALJ cannot rely on the vocational expert's opinions about other work that she could do because the ALJ failed to include a limitation in the hypothetical question that Syms has moderate limitations in concentration, persistence, or pace.

The first hypothetical the ALJ posed to the vocational expert included a limitation that the person "may perform tasks at a slower than usual rate, but not so slow as to be outside what is reasonable for a job setting."  Admin. Rec. at 58.  The slowness limitation was taken from Dr. Stenslie's assessment.  Dr. Stenslie included the stated limitation in his assessment and then wrote:  "All other functions are intact and unimpaired."  Admin. Rec. at 305.  Therefore, the limitation for concentration, persistence, and pace was included in the hypothetical the ALJ posed to the vocational expert.  The vocational expert's opinion, based on the hypothetical, provides substantial evidence to support the finding at Step Five.

<u>Conclusion</u>

For the foregoing reasons, the applicant's motion for an order reversing the decision of the Commissioner (document no. 8) is denied.  The Commissioner's motion for an order affirming the decision (document no. 10) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

July 21, 2011

cc:   Raymond J. Kelly, Esquire
      Gretchen Leah Witt, Esquire